Nos. 08-55483 & 08-56740

In the **UNITED STATES COURT OF APPEALS**
for the **NINTH CIRCUIT**

---

**LYNNE WANG, YU FANG INES KAI**, and **HUI JUNG PAO**,
On Behalf of Themselves and all Others Similarly Situated

*Plaintiffs-Appellees,*

*vs.*

**CHINESE DAILY NEWS, INC.**,

*Defendant-Appellant.*

---

On Appeal from the United States District Court
Central District of California
Case No. CV-04-1498-CBM-JWJ
The Honorable Consuelo B. Marshall

---

**BRIEF FOR AMICI CURIAE
IMPACT FUND, LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE
SAN FRANCISCO BAY AREA, & LEGAL AID SOCIETY –
EMPLOYMENT LAW CENTER IN SUPPORT OF APPELLEES'
PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

---

| | | |
|---|---|---|
| **IMPACT FUND** | **LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA** | **LEGAL AID SOCIETY – EMPLOYMENT LAW CENTER** |
| Jocelyn Larkin (SBN: 110817) | Paul Chavez (SBN: 241576) | Fernando Flores (SBN: 256193) |
| Michael Caesar (SBN: 280548) | 131 Steuart Street Suite 400 | 180 Montgomery Street Suite 600 |
| 125 University Avenue Suite 102 | San Francisco, CA 94105 | San Francisco, CA 94104 |
| Berkeley, CA 94710 | Tel: (415) 543-9444 | Tel: (415) 864-8848 |
| Tel: (510) 845-3473 | Fax: (415) 543-0296 | Fax: (415) 593-0096 |
| Fax: (510) 845-3654 | | |

*Amici Curiae*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

DISCLOSURE STATEMENT OF AMICI CURIAE ............................................ iii

INTEREST OF AMICI CURIAE ..........................................................................iv

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT ..........................................................................................................1

    I.    THE "TRIAL BY FORMULA" LANGUAGE FROM *DUKES* DID NOT CREATE AN ENTITLEMENT TO LITIGATE CLASS CLAIMS INDIVIDUALLY ......................................................1

        A.    "Trial by Formula" Refers Only to Hilao's Unusual Trial Plan and Was Rejected in *Dukes* Because Title VII Requires the Opportunity to Present Individual Defenses ..........1

        B.    The "Trial by Formula" Criticized in *Dukes* is Entirely Unlike the Method of Proof Used in this Case ...........................6

CONCLUSION .....................................................................................................10

CERTIFICATE OF COMPLIANCE ...................................................................... I

# Table of Authorities

**Page(s)**

## Cases

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) ......................... 2, 3

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ...................................... 8

*Comcast Corp. v Behrend*, No. 11-864,
  2013 WL 1222646 (U.S. Mar. 27, 2013) ................................................................ 2

*Driver v. AppleIllinois, LLC*, No. 06 C 6149,
  2012 WL 689169 (N.D. Ill. Mar. 2, 2012) .............................................................. 5

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ......................... 6, 7, 8

*Hilao v. Estate of Marcos*, 103 F.3d 767 (1996) .............................................. passim

*Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) ................................ 3

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ........................................................ 4

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................ 5

*Ross v. RBS Citizens, N.A.*, 667 F.3d 900 (7th Cir. 2011) ......................................... 5

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................. passim

*Wang v. Chinese Daily News. Inc.*, Nos. 08-55483, 08-56740,
  2013 WL 781715 (9th Cir. Mar. 4, 2013) .......................................................... 1, 4

*Wang v. Chinese Daily News. Inc.*, 623 F.3d 743 (9th Cir. 2010) ........................... 8

## Statutes

28 U.S.C. § 2072(b) ...................................................................................................... 4

## Rules

Federal Rule of Civil Procedure 23 ............................................................... passim

## DISCLOSURE STATEMENT OF AMICI CURIAE

Pursuant to Federal Rule of Appellate Procedure 29(c) and Ninth Circuit Local Rule 29-2, Amici Curiae hereby disclose that they are not-for-profit organizations, with no parent corporation and no publicly-traded stock.  No party or counsel for any party was involved in authoring or editing this brief in whole or in part and no entity or person, aside from the Amici Curiae, made any monetary contribution towards the preparation and submission of this brief.  All parties have consented to the filing of this Amicus Brief.

**INTEREST OF AMICI CURIAE**

Amicus Curiae **Impact Fund** is a non-profit legal foundation that provides funding, training, and co-counsel to public interest litigators across the country, assisting in civil rights and employment cases. It is a California State Bar Legal Services Trust Fund Support Center and provides services to legal services projects across the state. The Impact Fund is class counsel in the gender discrimination class actions, *Dukes v. Wal-Mart Stores, Inc.*, No. C-01-2252 (N.D. Cal.) and *Ellis v. Costco Wholesale Corp.*, No. C-04-3341 (N.D. Cal.).

**The Lawyers' Committee for Civil Rights of the San Francisco Bay Area ("Lawyers' Committee")** is a civil rights and legal services organization that advances, protects and promotes the rights of communities of color, immigrants, and refugees. Lawyers' Committee, with the assistance of hundreds of pro bono attorneys, provides free legal assistance and representation to individuals in the areas of racial justice, immigrant justice, and voting rights. In addition, Lawyers' Committee handles impact cases that focus on important civil rights issues, including the rights of low wage immigrant workers.

Throughout its history, Lawyers' Committee has sought broad-based relief for many of its clients. Indeed, class-wide relief is often the only way our clients, who are predominantly low-income, can effectively obtain redress for their grievances. Any improper or unnecessary restrictions on securing class-based

treatment as a form of relief under Rule 23 is therefore cause for concern and an issue of vital interest to Lawyers' Committee.

**The Legal Aid Society – Employment Law Center (ELC)** is a non-profit public interest law firm whose mission is to protect and advance the workplace rights of individuals from traditionally under-represented communities. Since 1970, ELC has represented plaintiffs in cases involving workplace rights, particularly those cases of special import to communities of color, women, recent immigrants, individuals with disabilities, the LGBT community, and the working poor. ELC often brings cases for low-wage workers as class and collective actions.

**SUMMARY OF ARGUMENT**

In the final section of this Court's opinion, the panel held that "[e]mployers are entitled to individualized determinations of each employee's eligibility for monetary relief." 2013 WL 781715, at *6 (internal citations omitted). The opinion continues: "Employers are also entitled to litigate any individual affirmative defenses they may have to class member' claims." *Id.* Incorporating the arguments made by Appellees in their Petition for Rehearing, Amici Curiae write separately to emphasize that the Supreme Court did not create a due process right, nor any other "entitlement," to litigate defenses to class claims on an individual basis. Additionally, Amici highlight the key ways in which this case differs from the specific practices criticized by the Supreme Court when it referred to "Trial by Formula" in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

**ARGUMENT**

**I. THE "TRIAL BY FORMULA" LANGUAGE FROM *DUKES* DID NOT CREATE AN ENTITLEMENT TO LITIGATE CLASS CLAIMS INDIVIDUALLY**

    **A. "Trial by Formula" Refers Only to *Hilao*'s Unusual Trial Plan and Was Rejected in *Dukes* Because Title VII Requires the Opportunity to Present Individual Defenses**

In *Dukes*, the Supreme Court's reference to "Trial by Formula" appears at the tail end of its extended discussion of whether the claims for backpay under

1

Title VII in that case could properly be certified under Federal Rule of Civil Procedure 23(b)(2). 131 S. Ct. 2561. Read in context, the limited import of the "Trial by Formula" shorthand is plain: it refers only to one trial plan adopted in an unusual case that the Court found incompatible with Title VII's statutory scheme.[1]

The "Trial by Formula" phrase appears after the *Dukes* Court concluded that claims for backpay under Title VII could not be certified under Rule 23(b)(2). *Id.* The Court reasoned that backpay was an "individualized monetary claim" and that, given the history and structure of Rule 23, such claims belonged under Rule 23(b)(3), where additional protections, like notice and the right to opt out, are mandatory. *Id.* at 2558.

The Court expressly did not reach the question of whether *any* forms of monetary relief might be certifiable under Rule 23(b)(2). It discussed, but did not adopt, the Fifth Circuit's formulation for what types of monetary relief could be certified under Rules 23(b)(2)—those "incidental to requested injunctive or declaratory relief." 131 S. Ct. at 2560 (quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998)). It said that *even if* that formulation were

---

[1] As Appellees note, the *Dukes* Court actually approved the use of aggregate proof. *See* Appellees' Petition for Rehearing at 7-10. Indeed, the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, No. 11-864, 2013 WL 1222646 (U.S. Mar. 27, 2013), affirmed the propriety of using damage models to calculate class-wide injury in antitrust actions. *Id.* at *5 (holding that damage model must be matched to theory of liability).

2

correct, the backpay claims in *Dukes* could not satisfy that test, since the Fifth Circuit defined "incidental" monetary relief, in part, as not requiring "*additional hearings* to resolve the disparate merits of each individual's case." *Id.* (quoting *Allison*, 151 F.3d at 415) (emphasis added). Since Title VII's "detailed remedial scheme" required additional proceedings (known as *Teamsters* hearings[2]) to permit the employer to present individual statutory defenses specific to Title VII, the backpay sought in *Dukes* could not be considered "incidental monetary relief." *Id.*

In one final paragraph, following this "even if" discussion, the *Dukes* Court refers to "Trial by Formula." Having concluded that Title VII requires additional individual proceedings before backpay can be awarded, the Court held that such proceedings could not be replaced with a "Trial by Formula." *Id.* at 2561.

There is no need to speculate what the Supreme Court meant by "Trial by Formula" as it specifically described the objectionable model:

> A sample set of the class members would be selected, as to whom liability for sex discrimination and the backpay owing as a result would be determined in depositions supervised by a master. The percentage of claims determined to be valid would then be applied to the entire remaining class, and the number of (presumptively) valid claims thus derived would be multiplied by the average backpay award in the sample set to arrive at the entire class recovery—without further individualized proceedings.

---

[2] The Court held that the two-stage trial model first articulated in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), "gives effect" to Title VII's statutory requirements. 131 S. Ct. at 2561.

3

131 S. Ct. at 2561. The Court then cited to the portion of the Ninth Circuit's *Dukes* ruling that contains a lengthy exegesis of the method of proof used in *Hilao v. Estate of Marcos*, 103 F.3d 767, 782-87 (1996), and how it might provide a viable approach to evaluate the backpay claims before it. *Dukes*, 131 S. Ct. at 2561; *see also infra* Part I.B. In other words, the Court's rejection of "Trial by Formula" refers only to the Ninth Circuit's proposal to apply the *Hilao* method of proof to the claims in *Dukes*. The Court "disapprove[d] that novel project,"— because it would not allow Wal-Mart to present statutory defenses to individual Title VII backpay claims and therefore abridged a statutory right in violation of the Rules Enabling Act (*not* due process).[3] 131 S. Ct. at 2561.

From this very narrow point concerning the possible frontiers of Rule 23(b)(2) as applied to Title VII backpay claims, this Court conferred for the first time a far-reaching entitlement to raise individualized defenses to *any* claim in a class or collective action, whether statutory or common law. 2013 WL 781715, at *6. But nowhere does the *Dukes* opinion refer to a due process right, or any such

---

[3] The Court explained that "[b]ecause the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b), a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." 131 S. Ct. at 2561 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)).

4

entitlement for that matter, to present individualized defenses.[4] The Court's analysis is tied entirely to Rule 23, the Title VII statutory scheme, and the remedial scheme set forth in *Teamsters*.

The Supreme Court's rejection of "Trial by Formula," then, means no more than that the *Hilao* method of proof cannot be substituted for individual *Teamsters* remedial hearings to determine backpay under Title VII. As other courts have found, it has no relevance where, as here, the operative statute affords no specific right to individualized proof. *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 n.7 (7th Cir. 2011) (holding that the presence of individual affirmative defenses in wage and hour action did not prevent 23(b)(3) certification; *Dukes* prohibited only backpay under Rule 23(b)(2) due to statutory defense under Title VII); *Driver v. AppleIllinois, LLC*, No. 06 C 6149, 2012 WL 689169, at *3 (N.D. Ill. Mar. 2, 2012) (holding that *Dukes* did not prevent assessment of damages in wage and hour class action with aggregate proof).

### B.   The "Trial by Formula" Criticized in *Dukes* is Entirely Unlike the Method of Proof Used in this Case

As noted above, the target of the Supreme Court's criticism in *Dukes* was the very specific and unusual trial model used in *Hilao*, "a 10,000+ plaintiff class

---

[4] The *Dukes* Court's did refer to Due Process in connection with the rights of *class members* to notice under Rule 23(b)(3) in suits primarily for monetary damages. 131 S. Ct. at 2559 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

5

action filed by Philippine nationals and their descendants who were alleged victims of torture, summary execution, and 'disappearance' at the hands of Ferdinand E. Marcos, the Philippines' former president." *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 625 n.54 (9th Cir. 2010) (en banc). That trial model, adopted to address an extraordinary set of facts and circumstances, has nothing to do with the kinds of routine evidence used here, which was based on mathematical extrapolation from Chinese Daily News's own employee and business records, and worker testimony. Aggregate proof was, in fact, only necessary in this case because of Defendant's own failure to maintain employee time records properly.

We turn, then, to this Court's discussion of *Hilao*, in *Dukes*. There, the Ninth Circuit, sitting en banc, declined to rule on the specifics of the district court's proposed trial plan, concluding that Rule 23 manageability had been met. "At this stage, we express no opinion regarding Wal-Mart's objections to the district court's tentative trial plan (or that trial plan itself) . . . ." *Dukes*, 603 F.3d at 625. The Ninth Circuit then observed that there were "a *range* of possibilities . . . that would allow this class action to proceed in a manner that is both manageable and in accordance with due process . . . ." *Id.* (emphasis added).

*One* possible approach, according to the *Dukes* en banc majority, would be to utilize the method used to determine compensatory damages in *Hilao*. *Id.* at 625. The components of that methodology were:

6

- *Claim Forms* – Class members filed written claims.  The district court determined that over 500 were facially invalid, leaving over 9500 claims.  *Id*.

- *Sample of Claims* – A computer randomly selected 137 claims, based upon a statistician's testimony about the probability that the percentage of valid claims among that sample could be generalized to all claims.  *Id.* at 625-26.

- *Special Master* – A special master supervised the depositions of the sample claimants, reviewed the claims, determined which claims were valid, and recommended an amount of damages to be awarded as to those claims.  The special master recommended a total compensatory damage award based upon the percentage of valid claims, multiplied by the average recommended award.  *Id.*

- *Jury Trial* – The district court then held a jury trial on compensatory damages.  The jury heard the testimony of the sample of claimants, the statistical expert, and the Special Master concerning his recommendations.  It accepted some of the Special Master's recommendations and rejected others.  *Id.*

- *Pro Rata Distribution of Compensatory Award* – The district court entered judgment for the sample claimants, based on the jury's

7

findings, and divided the compensatory damage award among the remaining claimants pro rata. *Id.*

The Ninth Circuit did not explain how specifically the *Hilao* methodology might be used, other than suggesting that Wal-Mart could litigate its individual defenses in the randomly selected "sample cases." *Id*. at 628 n.56. The "Trial by Formula" used in *Hilao* and criticized by the Supreme Court in *Dukes* bears no similarity to the process used in this case. Indeed, the differences are legion.

<u>First</u>, this case involved one trial of damages claims before one jury and one bench trial to decide the issues of injunctive relief, penalties, prejudgment interest, and restitution. *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 750 (9th Cir. 2010). *Hilao* was a trifurcated proceeding with the disputed methodology applied to only one phase: class compensatory damages. *Hilao* involved evidence as to only 1.5% of all claims submitted by class members, with the results extrapolated to the entire class. Here, Chinese Daily News's own time records, while incomplete, were used as the basis for determining damages. Chinese Daily News itself was responsible for the holes in the data, evidenced by the district court's determination that the long standing rule that an employee may prove damages "as a matter of just and reasonable inference" when an employer fails to keep proper and accurate records. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946).

8

Second, *Hilao* involved the use of a special master, who reviewed claims, supervised the taking of deposition testimony in the Philippines, and presented recommendations to the jury. No such intermediary fact-finder was used here. The evidence was presented directly to the jury and to the bench.

Third, the evidence in *Hilao* consisted of anecdotal testimony regarding a wide range of events, physical injuries, and subjective emotional distress. The evidence here consisted of objective proof provided by company business records, buttressed by compelling corporate admissions and worker testimony. Based on this evidence, plaintiffs' expert extrapolated the missing data and drew proper conclusions from that objective proof.

Fourth, the illegal conduct in *Hilao* occurred in a wide array of circumstances, resulting in vastly different types of injuries. In this case, the illegal conduct was one specific type of conduct (failure to pay workers for time worked), in one specific type of environment (Chinese Daily News' Monterey Park Facility in Southern California), resulting from the implementation of a uniform company policy, and which affected each class member in the same way (depriving each of pay earned).

The properly conducted proceedings in this case bear no resemblance to the "Trial by Formula" rejected by the Supreme Court in *Dukes*.

## CONCLUSION

For the foregoing reasons, Amici Curiae request that the Court grant Appellees' Petition for Panel Rehearing or, in the Alternative, Rehearing En Banc.

Dated: March 28, 2013             Respectfully submitted,

    /s/ Jocelyn Larkin
Jocelyn Larkin
IMPACT FUND
*Attorney for Amici Curiae*

## **CERTIFICATE OF COMPLIANCE**

1.	This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and Ninth Circuit Rule 29-2(c) because this brief contains 2,507 words (4,200 words or less) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.	The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

Dated:  March 28, 2013	Respectfully submitted,


	/s/ Jocelyn Larkin
	Jocelyn Larkin

I